UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BONNIE LYNNE STROMBERG,

        Plaintiff,

    v.

OCWEN LOAN SERVICING, LLC, et al.,

        Defendants.

Case No.15-cv-04719-JST

**ORDER REGARDING MOTIONS TO DISMISS AND MOTION TO STRIKE**

Re: ECF Nos. 60, 61, 62

      Before the Court are the Defendants' motions to dismiss and to strike portions of the Plaintiff's second amended complaint. ECF Nos. 60, 61, 62. The Court grants the motion to dismiss Plaintiff's claim for injunctive relief, but denies the motions to dismiss and motion to strike in all other respects.

## I.     BACKGROUND

      In this putative class action, Plaintiff Bonnie Lynne Stromberg asserts a California state law claim against two mortgage lenders and a mortgage loan servicing company for failing to reconvey a deed of trust on real property within thirty days after repayment of her home loan. Second Amended Complaint ("SAC"), ECF No. 58.

      Plaintiff owns property at 2405 Ric Drive, Gilroy, California that was encumbered by a ten-year home equity line of credit ("the loan") in the amount of $150,000. Id. ¶¶ 9, 18. Plaintiff obtained the loan from Morgan Stanley Dean Witter Credit Corporation on March 2, 2005. Id. The loan was secured by a deed of trust on her property, which Plaintiff executed in favor of Morgan Stanley Dean Witter Credit Corporation as the beneficiary. Id. ¶¶ 4, 18. The deed of trust was recorded in the Santa Clara County Clerk-Recorder's Office on April 11, 2005. Id.; ECF No.

61-2 at 5.[1]

Morgan Stanley Home Loans serviced the loan from its inception in March 2005 until April 30, 2012. Id. ¶ 21. Effective May 1, 2012, Ocwen Loan Servicing, LLC ("Ocwen") became the loan servicer pursuant to a pooling and servicing agreement. Id. ¶ 22. Ocwen notified Plaintiff that it was the new loan servicer, but "the notice did not identify the owner of the loan or the beneficiary or assignee of the Deed of Trust." Id. ¶ 22.

"On December 12, 2014, pursuant to Plaintiff's request, Ocwen provided a payoff statement for the loan, which stated that the total amount then due was $19,085.43, and that such payoff needed to be made on or before January 9, 2015." Id. ¶ 23; see also ECF No. 58-1, Ex. 1. The payoff statement provides that, "[u]pon receipt of the entire payoff amount, Ocwen will execute a release and discharge for the Deed of Trust/Mortgage . . . " Id. at 3.

On January 5, 2015, Plaintiff paid Ocwen the total amount due via wire transfer, thus satisfying all of her remaining obligations under the loan. SAC, ECF No. 58 ¶ 26. On January 7, 2015, Ocwen acknowledged that it received the wire transfer on January 5, 2015, and informed Plaintiff that her "account now reflects a principal balance of $0.00." Id. ¶ 27; ECF No. 58-2, Ex. 2. Ocwen instructed Plaintiff to sign, notarize, and return an attached form if she wished to close the account. ECF No. 58-2, Ex. 2 at 2. On January 14, 2015, Plaintiff executed and notarized the written request to close the account. ECF No. 58-3, Ex. 3.

Ocwen sent Plaintiff another letter on February 18, 2015 in which it again "acknowledged that Plaintiff's Loan had been fully paid." Id. ¶ 29; ECF No. 58-4, Ex. 4. In the same letter, Ocwen stated the following: "Ocwen will send the lien release document to the county courthouse in which your property resides. Once we receive confirmation that the release document has been recorded, we will forward you that information for your records. Depending on the state and county involved, this final step can take up to six (6) months." ECF No. 58-4, Ex. 4 at 2. Ocwen informed Plaintiff that the recordation of a "lien release document" would "make[] it a matter of public record that Ocwen no longer claims any interest in the above property with respect to this

---

[1] Pinpoint citations to docketed materials refer to the CM/ECF number electronically stamped at the top of each page.

loan." Id.

None of the Defendants delivered the original note, deed of trust, request for full reconveyance, or other necessary documents for reconveyance to the trustee within thirty days of loan satisfaction as required by California Civil Code § 2941(b). SAC, ECF No. 58 ¶¶ 33-34. The trustee did not execute a full reconveyance of the deed of trust to Plaintiff until June 25, 2015, and this reconveyance was not recorded by the Santa Clara County Recorder until July 1, 2015. ECF No. 61-2 at 21. Plaintiff alleges that this delay caused her to "suffer[] injury in the form of slander of title, incurred costs, impaired credit and incomplete and inaccurate public records respecting her financial obligations and credit worthiness." SAC, ECF No. 58 ¶ 43.[2]

Plaintiff alleges that "the ownership status of Defendants vis-à-vis the Loan and Deed of Trust as of the date on which the obligations arose under Cal. Civ. Code § 2941(b) is not easily ascertained" because the Defendants "fail[ed] . . . to properly maintain a record of transactions affecting the ownership of Plaintiff's Loan and the Deed of Trust securing the Loan." Id. ¶ 36. Plaintiff alleges that Defendant Morgan Stanley Private Bank, N.A. ("Morgan Stanley") acquired Plaintiff's loan in 2011 from its predecessor, Morgan Stanley Credit Corporation, after a corporate merger. Id. ¶¶ 11, 19-20. And Morgan Stanley was listed as the beneficiary on the deed of trust at the time the Plaintiff satisfied her loan in January 2015. Id. ¶ 38. However, both Morgan Stanley and its Co-Defendant RBS Citizens, N.A. ("Citizens") "maintain that, at some point after the origination of the Loan, Citizens acquired 'Investor Rights' in the Loan . . . pursuant to a [purchase agreement] between [Morgan Stanley Credit Corporation] and Citizens dated March 1, 2006." Id. ¶ 37. Accordingly, Plaintiff alleges "that Citizens in fact acquired an ownership interest in the Loan prior to the date on which the Loan was satisfied, although no assignment of the Deed of Trust was executed or recorded in connection with the Purchase Agreement until many years later and more than 30 days after the Loan was satisfied." Id. In fact, Morgan Stanley did not execute an assignment of the deed of trust to Citizens until June 2, 2015, and that

---

[2] Plaintiff provides more specific details as to how this delay injured her in a supplemental declaration attached to her opposition. ECF No. 101-1, Ex. A. The Court addresses that declaration below in Part III.B.2.

assignment was not recorded with the Santa Clara County Clerk Recorder until July 1, 2015.  Id. ¶ 38; ECF No. 61-2 at 15.

Plaintiff also alleges that, "[a]lthough Defendant Ocwen was not the lender on Plaintiff's Loan or an investor to whom the Deed of Trust was formally assigned, . . . Ocwen acquired an interest in the Loan at some point, which it continued to possess at the time that the obligations under [California law] arose and as to which it thereafter acted for its own advantage or benefit." SAC, ECF No. 58 ¶ 40.  Plaintiff further alleges that, "even if it was not the beneficiary or assignee of the Loan or Deed of Trust, Ocwen had and has an independent responsibility for complying with Section 2941(b) . . ." Id. ¶ 41.

Plaintiff filed her complaint in California state court on September 4, 2015.  ECF No. 1-1. She asserts a single cause of action under California Civil Code § 2941(b) against all three Defendants.  SAC, ECF No. 58 ¶¶ 60-63.  She seeks declaratory and injunctive relief, statutory damages in the amount of $500 per violation, and reasonable attorney's fees.  SAC, ECF No. 58 at 17-18.  Ocwen subsequently removed the action federal court.  ECF No. 1-1.

## II.     JURISDICTION

This Court has jurisdiction over the action under the Class Action Fairness Act of 2005 ("CAFA") because Plaintiff asserts this action on behalf of more than one hundred putative class members; the parties are diverse; and the aggregate amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2).

## III.    ANALYSIS

All three Defendants move to dismiss Plaintiff's second amended complaint under Rule 12(b)(1) and/or Rule 12(b)(6).  ECF No. 60, 61, 62.  In the event the Court does not dismiss Plaintiff's complaint in its entirety, Ocwen moves to strike Plaintiff's request for attorneys' fees, costs, pre- and post-judgment interest, and injunctive relief under Rule 12(f).  ECF No. 61.

### A.  Request for Judicial Notice

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

4

accuracy cannot reasonably be questioned." The Court may also "consider materials incorporated into the complaint," where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Pursuant to Ocwen's request, the Court takes judicial notice of the following documents associated with Plaintiff's loan and deed of trust:

- April 11, 2005 deed of trust identifying Morgan Stanley Dean Witter Credit Corporation as beneficiary
- July 1, 2015 corporate assignment of deed of trust from Morgan Stanley to Citizens
- July 1, 2015 substitution of T.D. Service Company as trustee
- July 1, 2015 full reconveyance of the deed of trust to Plaintiff

ECF No. 61-2. Each of these documents was publicly recorded by the Santa Clara County Record's Office. As such, they are public records that are properly subject to judicial notice. Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089, 1093 (N.D. Cal. 2009) (taking judicial notice of recorded instruments that affect the parties' property interests). Plaintiff does not object to the accuracy of these documents, which are incorporated into her complaint. The Court may take judicial notice of these documents without converting the motions to dismiss into motions for summary judgment. Thomas v. Walt Disney Co., 337 F. App'x 694, 695 (9th Cir. 2009) (quoting Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986)).

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Ocwen moves to dismiss Plaintiff's second amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction on standing and mootness grounds. ECF No. 61. Citizens joins in that motion. ECF No. 62.

**1. Legal Standard for Motions to Dismiss under Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the

Court.  See Fed R. Civ. P. 12(b)(1).  Because subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case, a 12(b)(1) motion must be decided before other motions.  5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed.).

Federal courts "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Because Article III of the Constitution "limits the jurisdiction of the federal courts to Cases and Controversies," a plaintiff seeking to invoke federal jurisdiction "must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action."  Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013) (internal quotation marks omitted).  If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1).  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). Moreover, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."  Id. (internal quotation marks omitted).

### 2.  Standing

To have the requisite constitutional standing to bring a suit in federal court, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-561 (1992)).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."  Spokeo, 136 S. Ct. at 1547.  And "at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element."  Id. (internal quotation marks omitted).  However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).  The present motion hinges primarily on the first element: the "injury in fact" requirement.

The Supreme Court's decision in <u>Spokeo</u> reaffirmed and elaborated upon a few principles regarding the "injury in fact" requirement.[3] First, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Spokeo</u>, 136 S. Ct at 1548 (quoting <u>Lujan</u>, 504 U.S. at 560) (internal quotation marks omitted)). The injury is "particularized" if it "affect[s] the plaintiff in a personal and individualized way," and it is "concrete" if it is "real" and "actually exist[s]." <u>Id</u>. Second, the Court explained that "intangible injuries can nevertheless be concrete." <u>Id</u>. at 1549. To determine whether an intangible injury is concrete, it is instructive to consider both legislative judgment and "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." <u>Id</u>. Finally, although "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." <u>Id</u>. at 1549 (quoting <u>Lujan</u>, 504 U.S. at 578) (emphasis in original). In some cases, the statutory violation at issue "may result in no harm" such that the plaintiff must allege additional harm to satisfy the injury-in-fact requirement. Id. at 1550. However, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," in particular where the violation presents an inherent "risk of real harm," and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." <u>Id</u>. at 1549 (emphasis in original).

Based on <u>Spokeo</u>, Ocwen and Citizens argue that Stromberg has not adequately alleged that she suffered an injury-in-fact. ECF No. 100.[4] To support their argument, Defendants point to

---

[3] Although the <u>Spokeo</u> decision was issued after the initial hearing on this matter before Judge Whyte, this Court allowed the parties to file supplemental briefing regarding the effect, if any, that <u>Spokeo</u> has on their respective standing arguments. ECF No. 95.
[4] Defendants do not argue that Stromberg has failed to satisfy the other standing requirements, so the Court does not address those requirements at length. In any event, Stromberg's injuries are particularized, traceable to the challenged conduct, and likely to be redressed by a favorable judicial decision. Compl., ECF No. 58 ¶ 43.

cases in which courts have held that statutory violations of analogous state prompt-recording laws are not sufficient on their own to establish an injury-in-fact for standing purposes. Id. at 4.

Courts are divided as to whether a bare procedural violation of a state prompt-recording law, absent any additional allegations of tangible harm, is enough to satisfy Article III standing. Both the Eleventh Circuit and the Southern District of Florida have held that it is not. See Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1002 (11th Cir. 2016) (holding that a statutory violation of New York's prompt-recording law was not sufficient on its own to establish a concrete injury for standing purposes); Zia v. CitiMortgage, Inc., No. 15-CV-23026, 2016 WL 5369316, at *1 (S.D. Fla. Sept. 26, 2016) (same).[5] On the other hand, New York district courts are in agreement that a statutory violation of a prompt-recording law constitutes an injury-in-fact because it "create[s] a 'real risk of harm' by clouding the titles to [plaintiffs'] respective properties," thus potentially jeopardizing the plaintiffs' ability "to sell or encumber the subject property, or [] to finance another property . . .". Jaffe v. Bank of Am., N.A., 197 F. Supp. 3d 523, 528 (S.D.N.Y. 2016); see also Bellino v. JPMorgan Chase Bank, N.A., No. 14-CV-3139 (NSR), 2016 WL 5173392, at *9 (S.D.N.Y. Sept. 20, 2016), motion to certify appeal granted, No. 14-CV-3139 (NSR), 2017 WL 129021 (S.D.N.Y. Jan. 13, 2017) (same); Zink v. First Niagara Bank, N.A., No. 13-CV-01076-RJA-JJM, 2016 WL 3950957, at *6 (W.D.N.Y. July 1, 2016) (same); Villanueva v. Wells Fargo Bank, N.A., Case No. 13-CV-5429, ECF No. 115 (S.D.N.Y, Feb. 13, 2017) and Bowman v. Wells Fargo Bank, N.A., Case No. 14-CV-648, ECF No. 125 (S.D.N.Y, Jan. 25, 2017) (finding that there was a "material risk of harm associated with that violation" because a potential creditor could wrongfully deny credit based on his or her erroneous belief that the mortgagor had not paid off his mortgage, and further finding that "[t]he intangible harm from delayed filing of a certificate of discharge is closely related to the harm redressed by actions to quiet title").[6] Despite those districts' apparent agreement on the issue, one New York district

---

[5] Like California Civil Code Section 2941, New York's prompt recording law requires that the mortgagee record the certificate of discharge within thirty days after completion of payment, subject to a $500 statutory penalty. N.Y. Real Prop. Law § 275; N.Y. Real Prop. Acts. Law § 1921.

[6] Defendants cite to Judge Smith's August 2016 report and recommendation in Villanueva and Bowman to support their standing argument. ECF No. 100 at 4. However, the court presiding

court recently noted that "the question is extremely close," and another certified the question for interlocutory review. Maddox v. Bank of N.Y. Mellon Trust Co., No. 15CV01053RJAJJM, 2017 WL 449962, at *2 (W.D.N.Y. Jan. 30, 2017); Bellino v. JPMorgan Chase Bank, N.A., No. 14-CV-3139 (NSR), 2017 WL 129021, at *3 (S.D.N.Y. Jan. 13, 2017) (finding "that there are substantial grounds for difference of opinion on the question of whether the statutory violation in question is sufficient to establish standing"). In sum, the state of the law in this area is unclear and in flux.

Ultimately, though, this Court does not need to enter into the debate. The Court does not need to decide whether a bare procedural violation of California's analogous prompt-recording statute constitutes a concrete injury-in-fact for standing purposes because Stromberg has not alleged "a bare procedural violation, divorced from any concrete harm." Spokeo, 136 S. Ct. at 1549. To the contrary, she has alleged "*additional* harm beyond the one [the legislature] has identified." Spokeo, at 1549-50 (emphasis in original). In her complaint, Stromberg alleges that she "suffered injury in the form of slander of title, incurred costs, impaired credit and incomplete and inaccurate public records respecting her financial obligations and credit worthiness." Compl. ECF No. 58 ¶ 43. Even if this allegation regarding injury is, as Defendants contend, too conclusory by itself to establish an injury-in-fact, Stromberg has also submitted an affidavit that includes further factual support for her standing. ECF No. 101-1, Ex. A.[7] In that affidavit, Stromberg declares that she paid off her loan because she wanted to obtain a new home equity line of credit "so that [she] would have sufficient funds available in the event of unforeseen expenses, such as home repairs and veterinary bills." Id. ¶ 11. In an effort to rectify the Defendants' recording delay, Stromberg declares that she "expend[ed] substantial time attempting to determine the status of the recording of the reconveyance and release document," including almost a dozen communications with both the Defendants and the Santa Clara County Clerk's Office. Id. ¶¶ 32,

over these related cases ultimately declined to adopt that report and recommendation. ECF No. 101-2, Ex. B.

[7] "While review for failure to state a claim under 12(b)(6) is generally confined to the contents of the complaint, in determining constitutional standing, 'it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.'" Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (internal citations omitted) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)).

15, 21-29.  In addition to her "time and efforts," Stromberg alleges that she "incurred out of pocket expenses in the course of [her] efforts to have the Release of the Deed of Trust recorded," Id. ¶ 33.  She further declares that the recording delay prevented her from applying for and obtaining a new home equity line of credit.  Id. ¶ 31.  As a result, she had to delay roof repairs on her home before the rainy season, and ultimately had to pay for those repairs by dipping into her IRA account and incurring higher interest rates on her credit cards.  Id. ¶¶ 23, 31.

Stromberg's expenditures of time and money are not "intangible" injuries.  Rather, they are precisely the kinds of concrete injuries that support Article III standing.  See Cent. Arizona Water Conservation Dist. v. U.S. E.P.A., 990 F.2d 1531, 1537 (9th Cir. 1993) ("Pecuniary injury is clearly a sufficient basis for standing.") (internal quotation marks and citations omitted); Walker v. City of Lakewood, 272 F.3d 1114, 1124, n. 3 (9th Cir. 2001) (considering "reputational harm suffered" in the injury-in-fact analysis).  Therefore, the Supreme Court's concerns in Spokeo about bare statutory violations and intangible harms simply are not implicated here.

Unlike Stromberg, the plaintiffs in the cases addressing New York's prompt-recording laws completely failed to include any allegations of injury beyond the statutory violation itself.  See Bellino, 2016 WL 5173392 at *9 (noting that plaintiff did not "sustain[] additional, economic injuries" beyond the statutory violation itself); Jaffe, 197 F. Supp. 3d at 526 ("[P]laintiffs do not allege they suffered any additional harm based on defendant's failure to timely file the proper documentation."); Zink, 2016 WL 3950957 at *4 ("[Plaintiff] does not allege that he suffered any adverse consequences (such as inability to sell the property) from the belated filing."); Zia, 2016 WL 5369316 at *4 ("There are no allegations here of any injury other than bare procedural violations. . . . [Plaintiff] has identified no tangible or intangible harm that he suffered, other than the fact that the delay in recording occurred.").  As a result, those courts had to decide whether a bare statutory violation of the prompt-recording statute was itself sufficient to confer Article III standing, thus triggering the Spokeo inquiry into legislative judgment and traditional common law analogs.  See, e.g., Nicklaw, 839 F.3d at 1002 ("Because Nicklaw alleges only that CitiMortgage violated New York law, we must determine whether the intangible harm caused by the delay in recording the certificate of discharge constitutes a concrete injury in fact.").  The Court is not

United States District Court
Northern District of California

presented with that question here.

Stromberg's allegations of particularized, concrete injury also distinguish this case from Nicklaw and Zia. In Nicklaw, the plaintiff failed to allege that he was even aware of the statutory violation when it occurred, let alone that he "lost money" or "that his credit suffered." Nicklaw, 839 F.3d at 1003. In contrast, Stromberg was aware of the Defendants' failure to timely record the reconveyance during the relevant time period, she spent her own time and money trying to resolve the issue, and she alleges that she "suffered injury in the form of slander of title, incurred costs, impaired credit and incomplete and inaccurate public records respecting her financial obligations and credit worthiness." Compl. ECF No. 58 ¶ 43; ECF No. 101-1, ¶ 20. The Zia court suggested that the presence of allegations like this would change the outcome of its standing analysis. Zia, 2016 WL 5369316 at *4 ("He makes no allegation, for example, that there existed a cloud on the title to his property as a result of the Defendants' failure to timely file these documents or that he was in any other way prohibited or deterred from transferring the property or obtaining any additional lien."). Because Stromberg alleges those tangible harms here, the Court finds those cases distinguishable.

In sum, Stromberg has demonstrated that she has standing under Article III. Even if the jurisdictional allegations in her complaint are "not sufficient" on their own, "the district court may deny the [Rule 12(b)(1)] motion and direct the pleader to amend the pleading" if "the pleader's affidavits or other evidence show either that the court actually has subject matter jurisdiction over the case or that the nonmoving party might be able to amend to allege jurisdiction. " Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.). Therefore, the Court denies the motion to dismiss for lack of subject matter jurisdiction and instructs Plaintiff to amend her complaint to include the additional allegations of injury contained in her affidavit.

### 3. Mootness

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Knox v. Serv. Employees Int'l Union, Local 1000, 132 S. Ct. 2277, 2287 (2012) (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Chafin v. Chafin,

133 S. Ct. 1017, 1019 (2013) (internal quotation marks and citations omitted).

Ocwen argues that Stromberg's claim is moot because Ocwen and Citizens gave Stromberg a check for $1,050 – an amount that exceeds what she could recover under Section 2941(d) if successful. ECF No. 61 at 13-19. Ocwen also contends that Stromberg's putative class claims are moot because a class has not been certified yet. Id.

Stromberg responds that her individual claim is not moot because she did not accept or cash the check and, but rather sent it back to the Defendants. ECF No. 66 at 12-19. Stromberg also argues that, even if her individual claim was rendered moot, the class claims remain live. Id.

In Campbell-Ewald Co. v. Gomez, the Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." 136 S. Ct. 663, 672 (2016), as revised (Feb. 9, 2016). The defendant in that case had filed an offer of judgment pursuant to Federal Rule of Civil Procedure 68 to settle the plaintiff's individual claim before the deadline to file a motion for class certification, but the plaintiff did not accept the settlement offer. Id. at 667-68. The defendant subsequently filed a motion to dismiss in which it argued that "its offer mooted [the plaintiff's] individual claim by providing him with complete relief." Id. at 668. The defendant also argued that the putative class claims were moot because the plaintiff had not moved for class certification before his claim was extinguished. Id. The Supreme Court rejected both of these arguments. In doing so, the Court reasoned that, under "basic principles of contract law," an unaccepted settlement offer has no legal force, and therefore "the parties remain[] adverse" and "retain[] the same stake in the litigation they had at the outset." Id. at 670-71. The Court also noted that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." Id. at 672. The Court expressed concern that a contrary approach would allow defendants to pick off an individual plaintiff "to avoid a potential adverse decision . . . that could expose it to damages a thousand-fold larger than the bid [the individual plaintiff] declined to accept." Id. The Court declined to decide "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount," saving this question "for a case in which it is not hypothetical." Id.

This hypothetical became a reality in <u>Chen v. Allstate Ins. Co.</u>, 819 F.3d 1136, 1138 (9th Cir. 2016).[8] In that case, which was decided just a few months after <u>Campbell-Ewald</u>, the defendant deposited the full amount of the named plaintiff's individual monetary claims into an escrow account pending entry of a court order or judgment to pay the tendered funds to the plaintiff. <u>Id.</u> at 1141. On appeal, the defendant asked the Ninth Circuit to reverse the district court's denial of its motion to dismiss for lack of subject matter jurisdiction, remand to the district court to order disbursement of the tendered funds to the plaintiff, and to dismiss the putative class action as moot. <u>Id.</u> at 1138. The Ninth Circuit held that, although the judgment "would afford [the plaintiff] complete relief on his individual claims for damages and injunctive relief," his individual claims were not moot because mootness turns on "when a plaintiff *actually receives* complete relief on that claim, not merely when that relief is offered or tendered." <u>Id.</u> at 1138, 1144-46, 1148-49 (emphasis in original). It further held that, even if the individual plaintiff's claims could be mooted in this way, "[the plaintiff] would still be able to seek class certification" under an exception to the mootness rule. <u>Id.</u> at 1142-44. That exception recognizes that "a named plaintiff's claim is 'transitory in nature and may otherwise evade review' in light of a defendant's tactic of 'picking off' lead plaintiffs to avoid a class action." <u>Id.</u> (quoting <u>Pitts v. Terrible Herbst, Inc.</u>, 653 F.3d 1081, 1091 (9th Cir. 2011) and citing 5 James Wm. Moore, <u>Moore's Federal Practice</u> § 23.64[1][b] (3d ed. 2016)). Finally, the Court explained that it is "inappropriate" for a court to enter judgment on the individual claims over the plaintiff's objection "before the plaintiff has had a fair opportunity to move for class certification." <u>Id.</u> at 1147-48.

Ocwen fails to distinguish or otherwise overcome the persuasive authority of <u>Campbell-Ewald</u> and <u>Chen</u>. Ocwen argues that <u>Campbell-Ewald</u> is distinguishable because "[c]hecks are payable on demand and do not require 'acceptance.'" ECF No. 68 at 5. Relatedly, it argues that <u>Chen</u> is distinguishable because the defendants retained ownership and authority over the bank account into which they had deposited the funds, whereas Ocwen and Citizens "actually tendered

---

[8] Although the <u>Chen</u> decision was issued after the initial briefing on these motions had concluded, the parties had the opportunity to discuss the <u>Chen</u> decision at Judge Whyte's hearing on this matter. <u>See</u> Transcript, ECF No. 82.

13

a payment in the form of a check." Transcript, ECF No. 82 at 4:22-5:6. In the time that has elapsed since the initial briefing and hearing on this matter, courts have consistently rejected these arguments, finding that <u>Campbell-Ewald</u> and <u>Chen</u> apply with equal force where the defendant tenders a check to the plaintiff. <u>See</u>, <u>e.g.</u>, <u>O'Neal v. America's Best Tire LLC</u>, No. CV-16-00056-PHX-DGC, 2016 WL 3087296, at *3 (D. Ariz. June 2, 2016) ("Plaintiffs have not accepted the checks tendered by Defendants. As a result, the parties remain adverse and retain the same stake in the litigation they had at the outset."); <u>Edwards v. Oportun, Inc.</u>, 193 F. Supp. 3d 1096, 1098-99 (N.D. Cal. 2016) (same); <u>Maddox v. Bank of N.Y. Mellon Trust Co.</u>, No. 15-CV-01053, 2016 WL 4541587, at *3 (W.D.N.Y. Aug. 31, 2016) ("Analyzing the question practically, a rejected tender is no different than a rejected offer; both leave a plaintiff with nothing. And, as a result, *Campbell-Ewald* dictates that the plaintiff's claim remains alive."); <u>Family Med. Pharmacy, LLC v. Perfumania Holdings, Inc.</u>, No. CV 15-0563-WS-C, 2016 WL 3676601, at *5 (S.D. Ala. July 5, 2016) (noting that "there appears to be an emerging consensus against a finding of mootness" in these circumstances).

Stromberg's individual claims are not moot because she rejected the Defendants' tender and therefore has not actually received complete relief for her claims. Even if her individual claims were moot, <u>Chen</u> makes clear that this Court cannot dismiss her claims until she has had a fair opportunity to move for class certification. Because there is a live controversy over which the Court has jurisdiction, the motion to dismiss based on mootness is denied.

\* \* \*

The Court denies Ocwen and Citizens' motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.

### C. Motions to Dismiss for Failure to State a Claim

Each of the three Defendants moves to dismiss Plaintiff's claim against them on the ground that they were not "the beneficiary or the assignee of the beneficiary" at the time of payoff, and therefore that they cannot be held liable under Section 2941(b). ECF No. 60, 61, 62.

#### 1. Legal Standard for Motions to Dismiss under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.2008). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

### 2. Analysis

Section 2941(b)(1) provides the following: "Within 30 calendar days after the obligation secured by any deed of trust has been satisfied, *the beneficiary or the assignee of the beneficiary* shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." Cal. Civ. Code § 2941(b) (emphasis added). The trustee then has twenty-one days to record or cause the reconveyance to be recorded. Id. § 2941(b)(1)(A). A violation of Section 2941 makes the violator liable for actual damages and a $500 penalty. Id. § 2941(d).

Morgan Stanley argues that it was not the beneficiary of Stromberg's deed of trust at the time the loan was satisfied in January 2015 because it sold the loan to Citizens by 2006. ECF No. 60 at 7-10. Although Morgan Stanley did not execute the written assignment of the deed of trust to Citizens until June 2, 2015,[9] it argues that it was not required to do so and that the transfer of the note made Citizens the beneficiary of the deed of trust as a matter of law. Id. Morgan Stanley further argues that "[i]t would make no sense to place Section 2941(b)'s recording obligations on

---

[9] That assignment was recorded on July 1, 2015. ECF No. 60-4, Ex. C.

the beneficiary of record rather than the present beneficiary" because "the past (but record) beneficiary has no way of even knowing if the loan has been satisfied." Id.

Citizens concedes that it acquired Stomberg's loan from Morgan Stanley no later than 2006. ECF No. 48 at 4. However, Citizens argues that it "was not the beneficiary of record when the Loan was repaid and thus had no legal authority to effect a reconveyance until such time as it was." ECF No. 62 at 3. Citizens further argues that "[e]xtending liability under these circumstances would subvert the legislature's intent that Section 2941 serve a penal purpose and unfairly impose the specter of penal sanctions upon parties that lack the ability to comply with its timelines." Id. at 5.

Ocwen argues that "[its] role with respect to Stromberg's Loan was limited to that of servicer, and therefore Ocwen is not subject to, and has not violated, Section 2941." ECF No. 61 at 19. Ocwen contends that "[t]he plain language of the statute imposes no obligations on a servicer such as Ocwen" and that "[a]ny expansion of liability under Section 2941 would be contrary to the Legislature's intent." Id. at 19-20.

To determine who is potentially liable under Section 2941(b), the Court first looks to the text of the statute. The plain text of Section 2941(b) does not limit prompt-recording liability to either the "present beneficiary" or the "beneficiary of record," but rather extends such liability to the "beneficiary" generally. Cal. Civ. Code § 2941(b). Although Section 2941 does not define "beneficiary," that word is broadly defined in Section 2943 as "a mortgagee or beneficiary of a mortgage or deed of trust, or his or her assignees." Cal. Civ. Code § 2943(a)(1). The California legislature has more narrowly referred to "the present mortgagee or beneficiary of record" in other parts of the statute, and the Court therefore presumes that its decision not to do so in Section 2941(b) was intentional. See, e.g., Cal. Civ. Code § 2941.7 (referring to "the present mortgagee or beneficiary of record"); Cal. Civ. Code § 2941(b)(3) (requiring a title insurance company to provide notice to the "beneficiary of record"); In re Ethan C., 54 Cal. 4th 610, 638 (2012) ("When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful."); United States v. Youssef, 547 F.3d 1090, 1094 (9th Cir. 2008) (citing Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).  Therefore, the text counsels against limiting the definition of a "beneficiary" to either the "beneficiary of record" or the "present beneficiary."

The statute's purpose is also instructive:  Section 2941 is a "remedial" statute designed to "protect[] . . . property owners who have discharged their debt, but cannot otherwise clear the cloud lingering over their title," and it should therefore be liberally construed "to protect all persons coming within [its] purview."  Pintor v. Ong, 211 Cal. App. 3d 837, 842-43 (1989).[10] Because no party disputes that Section 2941(b) was violated here, Stromberg undoubtedly falls within the statute's purview.

Given this statutory purpose, it is clear that Morgan Stanley, as the "beneficiary of record" identified in the original deed of trust, cannot "avoid the duties it assumed as beneficiary by executing a secret assignment."  Bartold v. Glendale Fed. Bank, 81 Cal. App. 4th 816, 829-30, 833 (2000), overturned on other grounds due to legislative action.  Like Morgan Stanley, the original beneficiary of record in Bartold never recorded any assignment of the deeds of trust.  Id.  The court reasoned that, although "[u]nrecorded assignments are 'valid as between the parties thereto and those who have notice thereof,' [they] are not valid against other parties."  Id. (quoting Cal. Civ. Code § 1217).  The court opined that a contrary rule would "thwart[]" the purpose of Section 2941, which is to ensure the timely recordation of reconveyances.  Id.  In addition, the court also considered that the original beneficiary of record "held itself out as the beneficiary, thereby putting no one involved in the transaction on notice that a further search for the real beneficiary needed to be made," "executed the requests for reconveyances as the beneficiary," and identified itself as the beneficiary in the loan releases.  Id.  The court concluded that "the beneficiary of

---

[10] Citizens argues that Section 2941 imposes a penalty and, therefore, should be "strictly construed."  ECF No. 62 at 5-6.  To support this contention, Citizens relies on cases that do not address Section 2941.  See id. (citing Tos v. Mayfair Packing Co., 160 Cal. App. 3d 67, 78 & n. 5 (1984) (construing statutes governing sales agreements between producers and purchases of edible nuts)).  The Court does not find those cases persuasive in light of a California court of appeal's more recent and explicit instruction to "liberally construe[]" Section 2941.  Pintor, 211 Cal. App. 3d at 842-43.

record . . . should be held to the commensurate responsibilities." <u>Id</u>.

Morgan Stanley argues that <u>Bartold</u> is distinguishable because the beneficiary of record in that case was also the loan servicer and, as such, "it was uniquely positioned to know exactly who owned the loan, who received the payments, and who was responsible for reconveying its interest when the debt was paid." ECF No. 104 at 4. This argument fails. The <u>Bartold</u> court's rationale was two-fold: (1) unrecorded assignments are not valid against other parties; and (2) allowing a lender to evade its responsibilities under Section 2941(b) via secret assignment would undermine the purpose of the statute. <u>See id</u>. Both of those rationales apply with equal force here. Moreover, Morgan Stanley's concern about not knowing when a final payment has been made, and thus when its obligations are triggered under Section 2941(b), is a problem of its own making: Morgan Stanley should simply provide the necessary documents to the trustee when it effects a transfer so the documents are readily available in the event that reconveyance is necessary. <u>See id</u>. ("The normal practice in a refinancing scenario is for the escrow agent to contact the beneficiary of record to start the sometimes tedious process of gathering the necessary documents.").

Nor can Citizens avoid potential liability under Section 2941(b). Citizens admits that it actually owned, and thus that it had a beneficial interest in, Plaintiff's loan at the time of repayment. ECF No. 48 at 4. Moreover, Plaintiff alleges, and the judicially-noticed documents demonstrate, that Citizens' agent (Ocwen) received the final payment on the loan and communicated with the Plaintiff regarding reconveyance. SAC, ECF No. 58 ¶¶ 23-32. Accordingly, Citizens' agent was the first to know when Plaintiff had fully repaid her loan, and thus when the requirements in Section 2941(b) were triggered.

In light of the statute's text, remedial purpose, and interpretation by California courts, the Court construes "beneficiary" to include both the beneficiary of record and the purported owner of the loan at the time of repayment where, as here, the Plaintiff alleges that their collective dilatory conduct caused the precise harm that Section 2941 was designed to remedy.

Although allowing both Morgan Stanley and Citizens to proceed as Defendants may seem contradictory, it is explained in part by the early stage of this litigation. Plaintiff persuasively argues that, at least with respect to Morgan Stanley and Citizens, "Defendants' attempts to pin the

blame for the violation on each other raises questions of fact that cannot be resolved at the pleading stage on a Rule 12 motion." ECF No. 65 at 5. For example, although Morgan Stanley claims to have sold the loan to Citizens in 2006, no party has produced that purchase agreement yet. Id. at 6. In fact, the only assignment of the loan produced thus far is the assignment from Morgan Stanley to Citizens dated June 2, 2015, several months after Plaintiff had fully repaid her loan. ECF No. 61-2 at 15. As a result, the Court cannot fully discern the scope of what rights and obligations, if any, were transferred from Morgan Stanley to Citizens prior to that date. Discovery may ultimately show that one of these two Defendants was not a beneficiary, but for present purposes Plaintiff has plausibly alleged a claim against both Morgan Stanley and Citizens. Courts have denied motions to dismiss potential defendants in similar circumstances – i.e., where a plaintiff "has narrowed it down" but is unable to identify the responsible defendant with certainty at the pleading stage. See, e.g., Romo v. Cate, No. 2:11-CV-2898 DAD P, 2014 WL 4276071, at *9 (E.D. Cal. Aug. 29, 2014), modified, No. 2:11-CV-2898 GEB DAD, 2014 WL 4656203 (E.D. Cal. Sept. 16, 2014), and report and recommendation adopted as modified, No. 2:11-CV-2898 GEB DAD, 2014 WL 4929461 (E.D. Cal. Sept. 30, 2014). For this reason alone, dismissal of either Morgan Stanley or Citizens would be improper at this early stage in the litigation before the Plaintiff has had the benefit of discovery.

Ocwen's potential liability under Section 2941(b) is less clear. Plaintiff concedes that, unlike Morgan Stanley and Citizens, "Defendant Ocwen was not the lender on Plaintiff's Loan or an investor to whom the Deed of Trust was formally assigned." SAC, ECF No. 58 ¶ 40. But she presents several theories as to why Ocwen is nonetheless liable under Section 2941(b). ECF No. 66 at 20-24.

The Bartold court "[did] not reach the question of whether a mere loan servicer can be considered a beneficiary under the statute" and "express[ed] no opinion on the subject." Bartold, 81 Cal. App. 4th at 830, n. 7. However, another California court has declined to extend the scope of liability under Section 2941(b) beyond beneficiaries and assignees. In Markowitz v. Fid. Nat. Title Co., a California court of appeal held that "[t]he plain language of [Section 2941(b)] imposes no obligations on an escrow holder whose role it is to facilitate the exchange of documents

19

between the beneficiary and the trustee, or to record the reconveyance on behalf of the trustee." 142 Cal. App. 4th 508, 523 (2006). The Markowitz court noted that "[t]he statute speaks only to the duties and obligations of trustees and beneficiaries." Id. Similarly, Section 2941(b) "does not expressly create duties or obligations" for loan servicers like Ocwen. Id. Therefore, the Court concludes that Plaintiff cannot state a claim against Ocwen unless she plausibly alleges that Ocwen was "the beneficiary or the assignee of the beneficiary." Cal. Civ. Code § 2941(b).

However, the Court concludes that Plaintiff has brought Ocwen within the scope of liability under Section 2941(b) for pleading purposes. Plaintiff plausibly alleges that Ocwen is liable as an "assignee" of the beneficiary. In her complaint, Stromberg alleges that Ocwen "acquired an interest in the Loan at some point, which it continued to possess at the time that the obligations under Section 2941(b) arose and as to which it thereafter acted for its own advantage or benefit." SAC, ECF No. 58 ¶¶ 37-40. To support this contention, Plaintiff points to a February 2015 letter that Ocwen sent to Stromberg after payoff, in which Ocwen stated that "recordation of [the lien release document] also makes it a matter of public record that Ocwen no longer claims any interest in the above property with respect to the loan." See id.; ECF No. 58-4, Ex. 4. Plaintiff argues that, "if Ocwen never held an interest in Plaintiff's property, there would be no reason for it to disclaim such an interest," and therefore this statement constitutes an admission that Ocwen was an assignee. ECF No. 66 at 20-21. Although a more developed factual record may ultimately fail to support Ocwen's assignee status, at the pleading stage the Court finds Ocwen's alleged admission that it had an interest in the loan sufficient to state a claim against Ocwen as an "assignee" under Section 2941(b).

The Court denies the Defendants' motions to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim.

### D. Motion to Strike under Rule 12(f)

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to

trial." <u>Whittlestone, Inc. v. Handi–Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." <u>Rosales v. Citibank</u>, 133 F.Supp.2d 1177, 1180 (N.D.Cal. February 14, 2001). In most cases, the Court should not grant a motion to strike unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." <u>Platte Anchor Bolt, Inc. v. IHI, Inc.</u>, 352 F.Supp.2d 1048, 1057 (N.D. Cal. April 19, 2004).

Ocwen and Citizens move to strike the portions of the Plaintiff's prayer for relief that seek attorneys' fees, costs, pre- and post-judgment interest, and injunctive relief, on the ground that Plaintiff has no right to these remedies as a matter of law. ECF No. 61 at 25-28.

Defendants' Rule 12(f) motion is improper. "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." <u>Whittlestone</u>, 618 F.3d at 971; <u>First Nat. Ins. Co. of Am. v. Peralta Cmty. Coll. Dist.</u>, No. 12-CV-5943 JSC, 2013 WL 622944, at *8 (N.D. Cal. Feb. 15, 2013) ("Defendant's request to strike the prayer for attorneys fees is not the proper subject for a 12(f) motion."). Nor does it authorize a district court to strike a claim for injunctive relief on the same ground. <u>See</u> <u>Grayson v. Cty. of Marin</u>, No. 14-CV-05225-JST, 2015 WL 720830, at *2 (N.D. Cal. Feb. 18, 2015) (citing <u>McGuire v. Recontrust Co., N.A.</u>, No. 2–11–cv–2787–KJM–CKD, 2013 WL 5883782, at *3 (E.D.Cal. Oct. 30, 2013)). Here, Plaintiff's prayer for relief does not fall into any of the five categories contemplated by Rule 12(f) – i.e., it is not an insufficient defense, redundant, immaterial, impertinent, or scandalous. <u>Whittlestone</u>, 618 F.3d at 974. Defendants' arguments regarding the availability of damages and injunctive relief are "better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." <u>Id.</u>

Moreover, even if Court were to convert Defendants' procedurally improper motion into a motion to dismiss, Plaintiff is still plausibly entitled to most of the relief she seeks. <u>See Williams v. Cty. of Alameda</u>, 26 F. Supp. 3d 925, 948 (N.D. Cal. 2014) (converting an improper motion to strike damages into a motion to dismiss). Although Section 2941(b) does not provide for the recovery of attorneys' fees, California law elsewhere provides that a court may award attorneys'

fees to a successful party when the action has resulted in the enforcement of an important right affecting the public interest. Cal. Civ. Proc. Code § 1021.5. Given that Plaintiff seeks relief on behalf of a class of similarly situated persons to enforce consumer protection legislation, an award of fees is possible. See, e.g., MacDonald v. Ford Motor Co., 142 F. Supp. 3d 884, 895 (N.D. Cal. 2015). Plaintiff is also entitled to costs if she prevails in this action. Cal. Civ. Proc. Code § 1032(b) ("Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."). Therefore, the Court denies the motion to strike or otherwise dismiss these claims.

However, Plaintiff does not have standing to seek injunctive relief because she has not shown a likelihood of future injury. Darisse v. Nest Labs, Inc., No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *4 (N.D. Cal. Aug. 15, 2016). Even in a putative class action, the named plaintiff "'bears the burden of showing that he has standing for each type of relief sought,' and so a plaintiff seeking equitable relief such as an injunction must further demonstrate a likelihood of future injury." Darisse v. Nest Labs, Inc., No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *3 (N.D. Cal. Aug. 15, 2016) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)). "This requires a showing that the plaintiff is 'realistically threatened by a repetition of the violation.'" Darisse, 2016 WL 4385849 at *3 (quoting Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006)). "Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm are insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury." Darisse, 2016 WL 4385849 at *3 (citing Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1044–45 (9th Cir. 1999)). Here, Plaintiff's "cause of action is based entirely on a past transaction," and she has not alleged that "there is an actual and immediate threat that [she] will be wronged again in the same way by Defendants." In re Intel Laptop Battery Litig., No. C 09-02889 JW, 2011 WL 7290487, at *2 (N.D. Cal. Apr. 7, 2011). Therefore, the Court dismisses Plaintiff's claim for injunctive relief with leave to amend. See Coe v. Gen. Mills, Inc., No. 15-CV-05112-TEH, 2017 WL 476407, at *1 (N.D. Cal. Feb. 6, 2017) (previously granting the named plaintiffs leave to amend their class action complaint to allege a likelihood of future injury).

**CONCLUSION**

The Court grants the motion to dismiss Plaintiff's claim for injunctive relief, but denies the motions to dismiss and motion to strike in all other respects. Plaintiff must file an amended complaint within thirty (30) days that includes the additional allegations of injury contained in her affidavit. If Plaintiff wishes to pursue her claim for injunctive relief, she must include allegations that demonstrate a likelihood of future injury.

IT IS SO ORDERED.

Dated: June 22, 2017

_____
JON S. TIGAR
United States District Judge