UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE LYNNE STROMBERG, Plaintiff, v. OCWEN LOAN SERVICING, LLC, et al., Defendants. | Case No. 15-cv-04719-JST **ORDER GRANTING SUMMARY JUDGMENT** Re: ECF No. 167 |

Before the Court is Defendant Ocwen Loan Servicing LLC's (Ocwen's) motion for summary judgment. ECF No. 167. The Court will grant the motion.

## I. BACKGROUND[1]

In this putative class action, Plaintiff Bonnie Lynne Stromberg asserts a single cause of action for violation of California Civil Code § 2941(b) against two mortgage lenders and a mortgage loan servicing company for failing to reconvey a deed of trust on real property within thirty days after repayment of her home loan. Third Amended Complaint ("TAC"), ECF No. 117.

In March 2005, Stromberg obtained a $150,000 ten-year home equity line of credit ("the loan") from Morgan Stanley Dean Witter Credit Corporation[2] ("Morgan Stanley"), secured by a deed of trust on her residential property in Gilroy, California. ECF No. 61-2 at 5. Stromberg executed the deed of trust in favor of Morgan Stanley as the beneficiary and it was recorded by the Santa Clara County Recorder on April 11, 2005. *Id.*

---

[1] The following facts are not contested.
[2] Morgan Stanley Dean Witter Credit Corporation shortened its name to Morgan Stanley Credit Corporation in April 2005. ECF No. 33-5 at 2. Morgan Stanley Credit Corporation was the predecessor to Morgan Stanley Private Bank, N.A. ECF No. 167-1 at 3.

In March 2006, Morgan Stanley and Citizens Bank of Massachusetts[3] ("Citizens") entered into a Master Mortgage Loan Purchase Agreement ("MPA") pursuant to which Morgan Stanley sold and transferred all of its interests in a portfolio of loans, including Stromberg's loan, to Citizens. ECF No. 33-5 at 2-3; ECF No.123-1. After it sold Stromberg's loan to Citizens, Morgan Stanley executed an assignment of the beneficial interest in Stromberg's deed of trust to Citizens, but it was not recorded. ECF No. 167-1 at 5.

The MPA provides that "Seller [Morgan Stanley] will sell, transfer, assign, set over and convey to the applicable Purchaser [Citizens] without recourse, all of the right, title and interest of Seller in and to the Mortgage Loans purchased by it included in such Transaction, including all Mortgage Loan Payments [.]" ECF No. 123-1 at 14. The MPA further provides that "after the sale of each Mortgage Loan, . . . all rights, benefits, proceeds and obligations arising therefrom or in connection therewith, shall be transferred to, and assumed by, the applicable Purchaser [Citizens]." *Id*. at 14-15.

In connection with the loan purchase agreement, Citizens and Morgan Stanley entered into a Master Servicing Agreement ("MSA") under which Morgan Stanley retained the right to service the loans for Citizens. ECF No. 123-2. Under the MSA, Morgan Stanley agreed to "service and administer the Mortgage Loans in accordance with . . . the normal and usual standards of practice of prudent mortgage servicers" and "proceed diligently to collect all payments due under each Mortgage Loan" as well as "all other charges that, as provided in the Mortgage, will become due and payable . . . by the Mortgagors [.]" ECF No. 123-2 at 18-19. As compensation, Morgan Stanley received: (1) a "Servicing Fee," computed as a percentage of the interest on the loans, (2) interest earned on funds in the "Custodial Account," into which Morgan Stanley was required to deposit, on a daily basis, all payments received on the serviced loans other than late payment charges and a portion of loan assumption fees, and (3) late payment charges, a portion of loan assumption fees, and default interest in excess of the "Mortgage Interest Rate." *Id.* at 20, 22, 31, 32. The late payment charges and other fees "to the extent collected, shall be retained by the

---

[3] Citizens Bank became a national bank under the name RBS Citizens, N.A. ECF No. 33-5 at 2.

2

Servicer [Morgan Stanley] and shall not be required to be deposited into the Custodial Account." *Id.* at 31-32.

In May 2012, Ocwen Loan Servicing, LLC ("Ocwen") entered into an Amended and Restated Purchase Agreement ("APA") with Morgan Stanley to acquire the servicing rights Morgan Stanley had acquired from Citizens under the MSA. ECF No. 167-1 at 3; ECF No. 123-3. The APA defined "Servicing Rights" to mean "all of [Morgan Stanley's] right, title and interest in and to (a) the right and obligation to administer, collect and remit payments of principal and interest . . . [and] (e) the right to receive all Servicing Fees, Ancillary Income and other contractually provided compensation for such services [.]" ECF No. 123-3 at 19. Under the APA, "Servicing Fees" is defined as "all compensation payable to the Seller [Morgan Stanley] as servicer under the Servicing Agreements, including each servicing fee payable based on a percentage of the outstanding principal balance of the Mortgage Loans and any other amounts payable to the Seller as servicer (including any deferred or accrued Servicing Fees, as reflected on the Estimated Closing Statement) under the Servicing Agreements, but excluding all Ancillary Income." *Id.* "Ancillary Income" is defined as "any and all income, revenue, fees, expenses, charges or other monies that the Seller is entitled to receive, collect or retain as servicer or subservicer pursuant to the Servicing Agreements (other than Servicing Fees), including fees payable to the Seller under HAMP, fees and charges for dishonored checks (insufficient funds fees), payoff fees, assumption fees, late fees, commissions and administrative fees on insurance and similar fees and charges collected from or assessed against mortgagors to the extent payable to the Seller, as servicer or subservicer, under the terms of the Servicing Agreements." *Id.* at 8.

Stromberg paid off her loan by wire transfer to Ocwen on January 5, 2015, and then requested in writing that her line of credit be closed. ECF No. 167-1 at 4. After Stromberg returned a signed statement indicating her desire to close the account, Ocwen sent her a letter dated February 18, 2015, confirming that her loan had been fully paid. TAC at 33. In the same letter, Ocwen stated the following: "Ocwen will send the lien release document to the county courthouse in which your property resides. Once we receive confirmation that the release document has been recorded, we will forward you that information for your records. Depending

3

on the state and county involved, this final step can take up to six (6) months." *Id.* Ocwen informed Stromberg that the recordation of a "lien release document" would "make[] it a matter of public record that Ocwen no longer claims any interest in the above property with respect to this loan." *Id.*

At the time Stromberg satisfied her loan in January 2015, Citizens was the owner of the loan and Morgan Stanley was listed as the beneficiary of record on the deed of trust. ECF No. 167-1 ¶ 12. On June 2, 2015, Morgan Stanley executed an assignment of the deed of trust, in which it transferred its beneficial interest, to Citizens. *Id.* The assignment was recorded by the Santa Clara County Recorder on July 1, 2015. *Id.*

None of the Defendants delivered the original note, deed of trust, request for full reconveyance, or other necessary documents for reconveyance to the trustee within thirty days of loan satisfaction as required by California Civil Code § 2941(b). ECF No. 113 at 3. The trustee did not execute a full reconveyance of the deed of trust to Stromberg until June 25, 2015, and this reconveyance was not recorded by the Santa Clara County Recorder until July 1, 2015. *Id.* Stromberg alleges that this delay caused her to "suffer[] injury in the form of slander of title, incurred costs, impaired credit and incomplete and inaccurate public records respecting her financial obligations and credit worthiness." TAC ¶ 53.

Stromberg filed her complaint in California state court on September 4, 2015. ECF No. 1-1. Ocwen subsequently removed the action to federal court. *Id.* Stromberg asserts a single cause of action under California Civil Code § 2941(b) against all three Defendants. TAC ¶ 66. She seeks declaratory relief and statutory damages. *Id.* at 3, 20.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). The court must draw all

reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Rancho Santiago Cmt. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. DISCUSSION

Section 2941(b)(1) provides the following: "Within 30 calendar days after the obligation secured by any deed of trust has been satisfied, *the beneficiary or the assignee of the beneficiary* shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." Cal. Civ. Code § 2941(b)(1) (emphasis added). The trustee then has twenty-one days to record or cause the reconveyance to be recorded. *Id.* § 2941(b)(1)(A). A violation of Section 2941 makes the violator liable for actual damages and a $500 penalty. *Id.* § 2941(d). The parties here dispute whether this language applies to Ocwen, the loan servicer.

Stromberg argues that Ocwen is independently liable under Section 2941(b)(1) because Ocwen acquired a "beneficial interest" in her loan when it obtained the servicing rights from Morgan Stanley under the APA. ECF No. 221 at 8-11. She says the "statute does not state – or even suggest – that a loan servicer cannot acquire a beneficial interest in the loans it services." *Id.* at 9. Stromberg asserts that a portion of the lender's beneficial interest was assigned to Ocwen

5

through its compensation for servicing the loans, namely its right to ancillary income. *Id.* at 10-11. She argues that Ocwen was therefore an "assignee" of the beneficiary within the meaning of Section 2941(b)(1). *Id.* at 11. Stromberg further argues that Ocwen's statement in its February 18, 2015 letter that Ocwen "no longer claims any interest" in the loan shows that it did have a beneficial interest sufficient to subject it to Section 2941(b)(1), since the statement might have referred to the beneficial interest it obtained through the servicing rights. *Id.* at 13.

The Court now addresses: (1) Ocwen's statement in its February 18, 2015 letter; (2) whether Ocwen's right to ancillary income goes beyond typical loan servicing rights and makes it an assignee of the loan's beneficiary; and (3) whether all loan servicers acquire a beneficial interest in the loans they service.

First, Stromberg's suggestion that Ocwen's 2015 letter conclusively shows Ocwen's status as an assignee of the beneficiary is unpersuasive. ECF No. 221 at 13. Ocwen's letter does not state that it had a *beneficial* interest in Stromberg's loan does nor does it refer to its status as a beneficiary or assignee of the beneficiary under Section 2941(b)(1). While this statement was sufficient for Stromberg to adequately allege that Ocwen was an "assignee" under Section 2941(b)(1),[4] that statement alone is not sufficient to survive summary judgment.

Turning to the second issue, Stromberg contends that "the servicing rights acquired by Ocwen go well beyond the mere right and obligation to administer, collect, and remit payments of principal and interest to the owners" because Ocwen has the right to receive all "ancillary income." *Id.* at 9-10. Ancillary income includes insufficient fund fees, payoff fees, assumption fees, late fees, commissions and administrative fees on insurance and other similar fees collected from or assessed against mortgagors. *Id.* at 10. Stromberg seems to place a distinction on ancillary income because she says a mortgagors's obligation to pay these fees and charges "arises

---

[4] In its order denying Ocwen's motion to dismiss, the Court concluded that Plaintiff had plausibly alleged that Ocwen was liable as an "assignee" of the beneficiary "for *pleading purposes*." ECF No. 113 at 20 (emphasis added). The Court noted that the February 2015 letter could serve as the foundation for Plaintiff's Section 2941(b) claim, because it suggested the possibility that Ocwen had a sufficient beneficial interest to bring it within the statute. The Court also made clear, however, that "a more developed factual record may ultimately fail to support Ocwen's assignee status." *Id.* In fact, discovery has failed to show a basis for Plaintiff's construction of the letter.

6

directly from the terms of the loans themselves." *Id.* However, she cites no authority for the proposition that ancillary income is materially different from the servicing fee Ocwen receives, which is computed as a percentage of the mortgagors's payments on the principal and interest of the loans. *See* ECF No. 123-3 at 19.

Additionally, the Court has found nothing to suggest that Ocwen's compensation is atypical for a loan servicer. *See* Thompson, *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications*, 86 Wash. L. Rev. 755, 802-03 (2011) (most servicers are entitled to retain fees charged to borrowers).[5] As an example, Fannie Mae[6] compensates loan servicers by paying servicing fees and allowing the servicer to retain miscellaneous fees, including late charges. Servicing Guide, A2-3-01: Servicer Compensation (June 13, 2018), https://www.fanniemae.com/content/guide/servicing/a2/3/01.html. Fannie Mae authorizes a servicer to obtain compensation by "deducting its fee from each borrower's payment before it is deposited to the custodial account," or by "writing itself a check against its custodial account for the amount of servicing fee that is due." *Id.* Similarly, Ocwen is permitted to collect and retain miscellaneous fees from the borrower without first depositing the funds into a custodial account. ECF No. 123-2 at 31-32; ECF No. 123-3 at 8.

Finally, turning to the question of whether all loan servicers acquire a beneficial interest in the loans they serve, Stromberg cites no authority, and the Court is aware of none, holding that a loan servicer is a beneficiary or an assignee of a beneficiary of a loan under Section 2941(b)(1). Stromberg cites to *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir.

---

[5] *See, e.g.*, *Matter of Pooling & Servicing Agreements*, No. 17-cv-01998, 2018 WL 1229702, at *4 (S.D.N.Y. Mar. 9, 2018) ("Additional servicing compensation in the form of: (i) all late payment charges, Penalty Interest received . . . (ii) one hundred percent (100%) of any assumption application fees and assumption fees [.]"); *In re USA Commercial Mortg. Co.*, 802 F. Supp. 2d 1147, 1155 (D. Nev. 2011) (loan servicer compensation included "late charges collected from the Borrower pursuant to the terms of the Note [.]").

[6] As of June 2018, about 46 percent of new home mortgages are guaranteed by government sponsored enterprises, of which Fannie Mae is the largest. Laurie Goodman et al., *Housing Finance at a Glance: A Monthly Chartbook, June 2018*, Urban Institute, 8 (2018), https://www.urban.org/sites/default/files/publication/98669/housing_finance_at_a_glance_a_monthly_chartbook_june_2018.pdf.

2011), for the proposition that "the lender or owner of a loan can sell all or a portion of its beneficial interest in a loan." ECF No. 221 at 9.[7] However, the fact that a lender or owner of a loan can sell a portion of its beneficial interest in the loan does not provide any authority for Stromberg's argument that Ocwen acquired a beneficial interest in Stromberg's loan from Citizens through its servicing rights.

Stromberg cites case law stating that loan servicing rights are "a valuable asset." *See* ECF No. 221 at 11; *In re USA Commercial Mortg. Co.*, 397 F. App'x 300, 302 (9th Cir. 2010). However, in this context, the Ninth Circuit merely noted that the value of the servicing rights comes from the "possibility of default interest, late charges, success fees, and other fees." *Id.* Similarly, other courts have stated that a loan servicer may properly collect payments *on behalf of a beneficiary* and enforce the *beneficiary's* security interest. *See, e.g.*, *Impink v. Bank of America*, No. 11-cv-0104 BTM (WMC), 2011 WL 3903197, at *4 (S.D. Cal. Sept. 6, 2011); *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1131 (E.D. Cal. 2010). Some courts have even explicitly stated that servicers do *not* have a beneficial interest in the loans they service. *See, e.g.*, *Diamond v. One West Bank*, No. CV-09-1593-PHX-FJM, 2010 WL 1742536, at *3 (D. Ariz. Apr. 29, 2010) (finding that, as a loan servicer, the entity had "no beneficial interest" in the loan); *Pittman v. Barclays Capital Real Estate, Inc.*, No. 09-CV-0241 JM(AJB), 2009 WL 1108889, at *2 (S.D. Cal. Apr. 24, 2009) (stating that the loan servicer was "neither the beneficiary nor the trustee . . . and ha[d] no beneficial interest in the [loan].").

Stromberg also cites case law that emphasizes that Section 2941(b)(1) is a remedial statute and should be liberally construed. ECF No. 221 at 8. This Court has previously acknowledged as much. ECF No. 113 at 17 (citing *Pintor v. Ong*, 211 Cal. App. 3d 837, 842-43 (1989)). Liberal construction of the statute is meant to "protect[] . . . property owners who have discharged their

---

[7] In *Cervantes*, the Ninth Circuit explained the history of the Mortgage Electronic Registration System ("MERS"). *Cervantes*, 656 F.3d at 1038-39. MERS was designed to avoid the need to record multiple transfers of a deed. *Id.* at 1039. Within this explanation, the court noted that "[a]fter a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers." *Id.* at 1038. The *Cervantes* court defined the roles of various industry participants by noting that that "the owner of the beneficial interest is entitled to repayment of the loan" and "the servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan." *Id.*

8

debt, but cannot otherwise clear the cloud lingering over their title." *See Pintor v. Ong*, 211 Cal. App. 3d at 843. But liberal construction of the statute by itself is not enough to subject loan servicers to its provisions.

Furthermore, the language of the statute counsels against extending the definition of a "beneficiary" to include a "servicing agent." As this Court has previously noted, Section 2941(b)(1) does not define "beneficiary." *See* ECF No. 113 at 16. However, the California legislature refers to a beneficiary's "servicing agent" in an adjoining subsection. *See* Cal. Civ. Code § 2941(b)(1)(B) (requiring a trustee to deliver a copy of the reconveyance "to the beneficiary, its successor in interest, or its servicing agent, if known"). The Court therefore presumes that its decision not to specifically include "servicing agent" in Section 2941(b)(1) was intentional. *See In re Ethan C.*, 54 Cal. 4th 610, 638 (2012) ("When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful."); *United States v. Youssef*, 547 F.3d 1090, 1094 (9th Cir. 2008) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).

The statute's legislative history is also instructive. In *Bartold v. Glendale Fed. Bank*, the California Court of Appeal, held that a beneficiary had to request a reconveyance from the trustee immediately upon loan payment, and the trustee could not meet its duty to record the reconveyance by delivering it after escrow closed to the escrowholder for recordation. 81 Cal. App. 4th 816, 832, 834-835 (2000). In its decision, the *Bartold* court specifically"[did] not reach the question of whether a mere loan servicer can be considered a beneficiary under the statute [Section 2941]" and "express[ed] no opinion on the subject." *Bartold*, 81 Cal. App. 4th at 830, n.7. In response, the legislature amended Section 2941(b) in 2001 to clarify that a beneficiary has 30 days to request a reconveyance from the trustee upon satisfaction the loan, and that a trustee meets its duty if the escrowholder records the reconveyance as a voluntary accommodation. Stats. 2001, ch. 560, 3, § (f). Even though the court left open the question of whether loan servicers

9

were beneficiaries, the legislature did not modify the text of Section 2941(b)(1) to include them. Additionally, in 2012, the legislature amended the statute to define "mortgage servicer" as "a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent." Cal. Civ. Code § 2920.5 (added by Stats. 2012, ch. 86, § 2). Notably, it did not define "mortgage servicer" as a beneficiary or an assignee of a beneficiary.

Moreover, other laws and regulations relevant to deeds of trust do not designate loan servicers as beneficiaries or assignees of beneficiaries. California Civil Code § 2924(a)(1) gives a loan servicer the ability to initiate a foreclosure, but only if it is an "authorized agent" of the beneficiary. Cal. Civ. Code § 2924(a)(1); *Nguyen v. JP Morgan Chase Bank N.A.*, No. 12-CV-04183, 2013 WL 2146606, at \*5 (N.D. Cal. May 15, 2013); *see also Javaheri v. JP Morgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW(FFMx), 2012 WL 6140962, at \*5 (C.D. Cal. Dec. 11, 2012) (loan servicer had the right to initiate the foreclosure if it was authorized to act on behalf of the beneficiary). The Truth in Lending Act ("TILA") requires creditors to provide borrowers with clear and accurate disclosures of credit terms. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). However, TILA does not treat a servicer as the assignee of a loan unless the servicer is also the owner of that loan. *See* 15 U.S.C. §§ 1641(f)(1)-(2); *Warwick v. Bank of New York Mellon*, No. CV 15-3343 SS, 2016 WL 2997166, at \*21 (C.D. Cal. May 23, 2016).

Given the persuasive authority against finding that Ocwen was a beneficiary, and in the absence of any contrary authority, the Court concludes that Ocwen, in its capacity as the loan servicer, was not "the beneficiary or the assignee of the beneficiary" under Section 2941(b)(1).

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

Ocwen is not a beneficiary or assignee of a beneficiary under California Civil Code Section 2941(b)(1). Accordingly, Ocwen's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: August 3, 2018

_____
JON S. TIGAR
United States District Judge